**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 26-32229 |
| TRIVISTA OIL CO., LLC, *et al.*[1] | ) Chapter 11, Subchapter V |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**DEBTORS' RESPONSE TO (A) CREDITOR FORT APACHE
ENERGY LLC'S MOTION TO CONVERT CASES TO CHAPTER 7
AND (B) UNITED STATES TRUSTEE'S EXPEDITED MOTION TO
DISMISS OR CONVERT CASE TO CHAPTER 7**

Trivista Oil Co., LLC ("Trivista Oil") and Trivista Operating LLC ("Trivista Operating," and together with Trivista Oil, "Trivista" or the "Debtors"), hereby respond to Creditor Fort Apache Energy LLC's Motion to Convert Cases to Chapter 7 [ECF No. 93] (the "Fort Apache Motion") and the United States Trustee's Expedited Motion to Dismiss or Convert Case to Chapter 7 [ECF No. 99] (the "U.S. Trustee Motion") as follows:

**PRELIMINARY STATEMENT & BACKGROUND**

1.     The overwhelming majority of creditors responding to the solicitation by Fort Apache's counsel favor the liquidation of the Debtor under the supervision of the bankruptcy court. The only practicable way to effectuate that liquidation is under chapter 11. While the Debtor could conceivably liquidate outside of bankruptcy, it would likely result in a lower value received for its assets.

2.     The Debtors are liquidating one way or the other and must move quickly. As described at the hearing on interim post-petition financing, the Debtors needed to address various regulatory issues, including plugging certain wells pursuant to Railroad Commission regulations,

---

[1] The Debtors in these chapter 11, subchapter V, cases are Trivista Oil Co., LLC and Trivista Operating LLC.

in order to retain its P-5 approval to sell oil and gas. On or about June 2, 2026, the Railroad Commission denied the Debtors' motion for rehearing regarding the P-5. The Debtors have laid off most of their employees related to operations and shut in the wells in anticipation of this outcome absent the ability to remedy the regulatory issues. The Debtors' operations-focused CRO resigned.[2] Many of the Debtors' oil leases will terminate absent production within 60 days. To capture any value for the Debtor's leases, the sale will need to be to a party capable of restarting operations promptly.

3.      At 10:30 p.m. on June 4, 2026, the Debtors obtained an offer from BIB Credit for $1,050,000 plus 25% of any recovery claims against the Debtors' former owner Natale Rea, as reflected in **Exhibit A** hereto (the "BIB Offer"). BIB Credit would be acquiring approximately half of the leases along with the associated wellbore, to which plugging requirements attach. The offer is contingent on the sale being free and clear of claims and interests, necessitating bankruptcy approval. It is not practical to realize the offer in chapter 7 because the Railroad Commission would need to take control of the wells for health and safety reasons, thereby incurring overwhelming administrative expense that prevent administration.

4.      The only effective way to give creditors what they overwhelmingly say they want is for the Debtors to continue in chapter 11 and pursue liquidation. That will undoubtedly inure to the benefit of the Debtors' estates. While the result for unsecured creditors is less certain.[3] If there is a substantial recovery against Rea, there could be a distribution to those creditors.

---

[2] The Debtors' CRO resigned voluntarily pursuant to his engagement letter as the issues facing the Debtor were no longer related to continuing operations. When negotiations for a potential sale with BIB Credit restarted on or about May 31, 2026, Craig Davis—whose experience is in the marketing and sale of oil and gas assets—stepped into the role to negotiate the terms of a potential sale. If the cases are not dismissed, the Debtors anticipate filing an application to retain Mr. Davis.

[3] The proceeds of the sale may need to be put into a trust or delivered to the subchapter v trustee to address the Debtors plugging requirements before paying unsecured creditors.

5. Based on this, as more fully set forth below, the Court should not convert the case. Further, in the event that the BIB Offer materializes into a binding agreement, subject to Court approval, or substantial progress is made, the Debtor submits that the "cause" for dismissal under Bankruptcy Code § 1112(b) no longer exists.

<strong><u>LIQUIDATION IN CHAPTER 7 v. CHAPTER 11 OR DISMISSAL</u></strong>

6. The obvious path of allowing a chapter 7 trustee to evaluate, negotiate, and perhaps effectuate a sale pursuant to the BIB Offer does not work here. On conversion, the Railroad Commission takes action to secure oil wells for health and safety reasons. This creates overwhelming administrative priority claims that effectively prevent chapter 7 trustees from administering the estate. While the Railroad Commission could waive or subordinate its claims to allow administration of the estate, its policy is to refuse to do so. Thus, conversion to chapter 7 would merely delay dismissal and add in an additional level of administrative expense.

7. Conversion is strictly worse for nearly all parties than continuing in chapter 11 or dismissal. The additional time for a chapter 7 trustee to get into place, evaluate, and ultimately dismiss the case would ensure that the Debtors' oil leases terminated for non-production. The Debtors would have other assets that could still be sold in connection with the windup of the Debtors' business. The Debtors' vehicles are unencumbered and could be auctioned outside of bankruptcy. The real property is subject to liens, but could also likely be sold. The claims against Natale Rae would either exist outside of bankruptcy (i.e., breach of fiduciary duty) or would belong to creditors (state-law fraudulent transfers). However, the Debtors' oil leases would be terminated and no buyer would take plugging and abandonment obligations separate from the ability to produce.

3

8.     Of course, all of that is Fort Apache's goal. Fort Apache has top leased a significant portion of the Debtors' leases. A top lease constitutes a future interest that only comes into effect in the event that the underlying lease is terminated. Causing the Debtors to lose their leases is much more valuable to Fort Apache than any recovery from its $10,000 claim secured by an abstract of judgment filed within the 90-day preference period. Fort Apache benefits from the diminishment of the Debtors' estates.

## DISMISSAL WOULD YIELD LOWER VALUE FOR THE ASSETS THAN CHAPTER 11

9.     While dismissal would avoid the guaranteed loss of the Debtors' oil leases, it would ultimately result in less value available than a sale under the BIB Offer. The offer is contingent on a sale free and clear and would be reduced without that language. Further, there would not be a practicable way to capture the upside reflected in the litigation claims outside of bankruptcy. The alternative with dismissal is a sale at a substantially lower value.

10.     The Debtors did not oppose dismissal before obtaining the BIB Offer. The hope of such an offer—in the absence of continuing production that would allow the Debtors to conduct a process for another prospective buyer—was not worth the costs of continuing in chapter 11 by obtaining post-petition financing. The Debtors were unable to obtain an actual offer prior to the May 20 hearing. The circumstances have changed now that the offer is on the table. The Debtors' understanding is that BIB has engaged an oil and gas transactional attorney and landman to prepare a definitive agreement prior to the June 18, 2026, hearing set by the Court.

11.     The expressed preferences of creditors for a court-supervised liquidation of the Debtor should also be considered. 50 of 55 non-duplicate responses on the Court's docket as of 1:00 p.m. CT on June 8, 2026, indicated a preference for a court-supervised liquidation.[4] In the

---

[4] All subsequently docketed responses also indicated a preference for conversion.

solicitation form circulated by Fort Apache, there was room for the reasons for the creditors' preference. Although predominantly left blank, they further indicate a desire for court supervision:

    a. Dkt. No. 106—Noted a concern that Trivista "will not follow through."

    b. Dkt. No. 107—Indicated that "[d]ismissal will allow Trivista to continue taking oil and the practice of nonpayment."

    c. Dkt. No. 108—Indicated a desire "to get rid of Trivista so we can get a better oil company that will pay oil royalties."

    d. Dkt. No. 127, 133, 158, 160—Indicated that they wanted "[t]o stop Trivista taking oil, sometimes by illegal methods such as unpermitted swabbing and not compensating mineral interest owners for it."

The two responses favoring dismissal with an explanation do not cut against a supervised sale as opposed to an unsupervised sale.  In Docket No. 118, the creditor indicated, she would "like to see if they can get out of bankruptcy on their own under new management because gas prices are up!" In Docket No. 159, the creditor indicated that her lease had been terminated as of August 2025 and that a chapter 7 trustee with no funds to operate "would only prolong administrative delay while preventing landowners from clearing title and coordinating with the Texas Railroad Commission to address abandoned infrastructure." These concerns would be addressed through a sale in chapter 11 the same as a sale outside of bankruptcy.

12.    While there was cause to dismiss the case on May 20, 2026, circumstances have changed. Since the interim hearing on the proposed post-petition financing, the Debtors have pressed BIB Credit to present an offer to acquire the Debtors' assets including wellbores and the attendant plugging obligations. Those efforts were successful and resulted in the BIB Offer. The Debtors will endeavor to reach a binding APA, subject to Court approval, prior to the scheduled June 18, 2026, hearing on the Fort Apache Motion and the U.S. Trustee Motion.

**CONCLUSION**

WHEREFORE, the Debtors respectfully submit that Court should deny Fort Apache Motion and the request to convert the case. To the extent that the Debtors obtain substantial progress on the BIB Offer before the June 18 hearing, the Debtors further submit that the "cause" for dismissal set out in the U.S. Trustee Motion will no longer be present and the Court should further the preferences of creditors for a court-supervised sale of the Debtors' assets in chapter 11.

Dated: June 8, 2026                                 Respectfully submitted,

                                                    SHANNON LEE BEATTY LLP

                                                    */s/R. J. Shannon*
                                                    R.J. Shannon
                                                    State Bar No. 24108062
                                                    J. Maxwell Beatty
                                                    State Bar No. 24051740
                                                    Sean T. Wilson
                                                    State Bar No. 24077962
                                                    2100 Travis Street, STE 1525
                                                    Houston, TX 77002
                                                    Email: rshannon@shannonleellp.com
                                                           mbeatty@shannonleellp.com
                                                           swilson@shannonleellp.com
                                                    Telephone: 713-714-5770
                                                    Facsimile: 833-714-5770

                                                    *Counsel to the Debtors*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served by (a) the Court's CM/ECF system on all parties registered to receive such service on the date of filing and (b) U.S.P.S. first class mail on all parties indicated in the attached service list within 24 hours of the filing.

                                                    */s/R. J. Shannon*

**U.S.P.S. SERVICE LIST**

Paul Duane Meinke
1494 CR 214
Giddings, TX 78942

The Nicky Sue Moore Trust
2840 West Highway 290
Giddings, TX 78942

Tri-C Resources, LLC
909 Witt Road
Houston, TX 77024

Linda Karnstadt & John
Karnstadt
1672 FR 2091
Giddings, TX 78942

Rebecca L. Sherill
2936 CR 114
Giddings, TX 78942

Elizabeth L. Dubcak
9 Beda Lane
Huntsville, TX 77320

Kim Moerbe
PO Box 147
Giddings, TX 78942

Bernadette Vess
3920 Cavalier Ct.
Irving, TX 75062

Vicky Gay Moerbe
304 Brazoswood Road
Austin, TX 78704-7200

Carrizo Well Service LLC
PO Box 890
Seguin, TX 78550

Texas Hot Oilers, Inc.
PO Box 1007
Giddings, TX 78942

Chemsync, Inc.
PO Box 1515
Giddings, TX 78942

Pamela Parks
6684 Orchard Dr.
Flower Mound, TX 75022

Diann Pietsch
529 E Washington St
Giddings, TX 78942

Julie Tonn (Tonn Trust #1)
P.O. Box 90
Giddings, TX 78942

Carolyn Gerdie Markert
P.O. Box 29747
San Antonio, TX 78229

Mildred Perry
1026 County Road 211
Giddings, TX 78942

Michelle Merka
P.O. Box 226
Paige, TX 78659

Annette Saegert Foerster
276 Saegert Rd
Paige, TX 78659

Linda O'Leary
1851 Carroll Fancher Way Apt
511
College Station, TX 77845

Rene I. Kreitz
12 Thunderbird Dr.
Holiday Island, AR 72631

Jeff Menth
601 FM 2104
Smithville, TX 78957

Kenneth Kreitz
3113 E. County Rd #140
Midland, TX 79706

Garland Spretz
10 Mongwo Kachina Ct.
Sandia Park, NM 87047

Earl Steinbach
1210 FM 2104
Smithville, TX 78957

Estate of Peggy S. Cook
2374 CR 209
Giddings, TX 78942

Fort Apache Energy, Inc.
151 Ranch Dr.
Boerne, TX 78015

Clifford Kreitz
3219 Patterson Dr.
Amarillo, TX 79109

Beverly Kathleen Alvey
81 Village Drive
Dahlonega, GA 30533

Charlotte JoLynn Nowell
2711 Hickory Bend Drive
Garland, TX 75044

Winfred Menzel
1609 S Timber Ct
Benbrook, TX 76126

Fairy Veronica Maxey
8407 Fremont Ave
Lubbock, TX 79423

Dustin Schatte
2383 CR 209
Giddings, TX 78942

Linda S. Cook Meuth
2374 CR 209
Giddings, TX 78942

Nancy F. Cook Falk
1424 NE 8th St.
Smithville, TX 78957

Rosa Lehman
176 Lake Front Dr.
Cedar Creek, TX 78612

Carl Steinbach
1210 FM 2104
Smithville, TX 78957

Arthur Graeter
1007 Olympia Drive
Houston, TX 77042

Bobby Albin Meuth
2374 CR 209
Giddings, TX 78942

7

David M. Cook
1140 FM 2104
Smithville, TX 78957

JRER Ltd.
1118 Bayou Island Drive
Houston, TX 77063

Judy Steglich Zoch
4747 Research Forest Drive, Ste
180-110
Spring, TX 77381

Madalyn Annette Alley
6215 Saddle Ridge
Arlington, TX 76016

Jerry Krchnak
PO Box 275
Smithville, TX 78957

David & Pamela Blau
975 FM 2104 Unit A
Smithville, TX 78957

Julius Lehman
100 Mammoth Dr.
Kyle, TX 78640

Peggy Stelich Noles
8636 Plum Lake Dr
Houston, TX 77095

Virginia Steglich Valero
626 Park Grove Ln
Katy, TX 77450

Gloria Steglich Walther
11931 Normont Dr
Houston, TX 77070

Donald R. O'Sell
68 Eagle Nest Dr
Chico, CA 95928

Kimberly Glattstein
60 Millbrook Way
Duxbury, MA 02332

Axis Energy Services, LLC
2626 Howell Street, Suite 840
Dallas, TX 75204

Kerry Valentene Burks
1741 Chatham Ln
Keller, TX 76248

Jolene Fisher
1718 CR 208
Giddings, TX 78942

Marian Wiederhold
1850 FM 2239
Giddings, TX 78942

Paul E Fisher
1718 CR 208
Giddings, TX 78942

Mary Beth Fisher
1361 CR 204
Giddings, TX 78942

Robert G. Droemer
1475 CR 208
Giddings, TX 78942

Shawn Kasper
2604 Lehigh Dr.
Austin, TX 78723

Tonya Mayfield
300 W Pleasantview Dr
Hurst, TX 76054